E. W. Duke v. The State.

No. 4210.    Decided June 19, 1909.

**Murder—Instrument and Means Used—Charge of Court—Deadly Weapon.**

Where upon trial for murder, the evidence showed that after a quarrel and altercation between defendant and the deceased, the latter procured a gun and returned with it with his hand on the hammer in a threatening manner, whereupon the defendant hurriedly shot and killed the deceased, the court should have given in charge to the jury article 676 Penal Code, with reference to the presumption favorably arising to the accused where the weapon or means used are such as are calculated to produce death, etc. Ramsey, Judge, dissenting.

Appeal from the District Court of Bexar.　Tried below before the Hon. Edward Dwyer.

Appeal from a conviction of murder in the first degree; penalty, life imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the first degree, his punishment being assessed at a life term in the penitentiary.　He owned a saloon.　The deceased was connected with, either as proprietor or employe, a butcher shop adjoining the saloon.　Both establishments used the water closet.　Appellant, however, contended that the water closet belonged to or was under his control, which was a disputed fact so far as the butcher shop people were concerned.　There is evidence to the effect that the deceased nailed up the water closet, and that appellant caught him in the act of nailing it up, and he went away.　There is testimony that after this occurrence appellant secured a lock, and locked the water closet against the butcher-shop people.　These matters magnified themselves into trouble of a personal nature between appellant and deceased.　The State proved animosity on the part of appellant and threats as well against the deceased.　A few moments before the fatal difficulty they had some words, and it is shown that the deceased took his hat off, and either threw it on the ground in a defiant way or struck appellant about the face with it—as the witnesses express it, "raked it across his (appellant's) face."　Without going into a detailed statement of the State's side of the case, it may be sufficient to say that the court presented that side of it sufficiently.

Appellant's contention is that the court erred in not charging article 676 of the Penal Code, with reference to the presumption arising, favorably to the accused where the weapon or means used are such as are calculated to produce death, maiming, etc.　In this connection appellant's testimony is, that after the deceased used his hat upon him, he made a threat to go into his butcher shop and return and settle the matter; that deceased went immediately into the butcher shop and returned, and as he returned he had a "gun" in his hand, and with his hand upon the hammer, and from his movements, and the environments of the occasion, he thought he was going to shoot, and that he, appellant, shot immediately, as he thought his life depended upon such action; that he shot hurriedly—did not even raise the gun to his shoulder, and deceased was slain.　There is evidence contradictory of appellant with reference to deceased being armed.　This does not affect the question.　When the accused introduces evidence suggesting or raising an issue favorable to his side, the law applicable to that testimony

should be given in charge to the jury. It is not the province of the court to settle the veracity of witnesses or weight of testimony in giving or refusing charges, or omitting to charge. Under appellant's testimony, above stated, the court should have given in charge article 676 of the Penal Code, and because of this omission this judgment should be reversed and remanded for another trial, and it is accordingly so ordered.

*Reversed and remanded.*

RAMSEY, JUDGE (dissenting).—I do not think the court erred in not giving in charge article 676. There was in the case no direct and positive evidence that the deceased had a gun. The testimony of appellant does not, as I believe, raise this issue. His strongest statement is: "He had something that looked like a gun to me." This undoubtedly entitled appellant to a submission of the issue of self-defense based on reasonable appearance of danger, but not, as I conceive, to an instruction that it was to be presumed that deceased intended to kill. This statute should never be given in charge, as I understand the law, unless there is evidence that, *in fact,* the deceased was in the act of using a deadly weapon. In this case all the evidence, except the mere surmise of appellant, shows that deceased was, at the time he was killed, unarmed.